Good morning, Your Honors. I'm John McConaghy. I represent the appellant, Linda Green. May it please the Court. And I'd like to reserve five minutes for... Watch your time, if you will. The first issue I'd like to talk about is whether, under applicable choice of law principles, the bankruptcy court should have applied this California probate code provision for the collection of 25% of income distributions from a spendthrift trust. And there's really just two points that I want to add to the briefs and briefly make in this regard. Number one, I think we've all, both sides agree on the applicable principle, which is that does this represent a, quote, fundamental policy of the state of California? And I think you can infer that it does because spendthrift trusts are almost universally adopted or enforced throughout the 50 states, with, I think, the spendthrift trust protection. But California is pretty unique in that it has this 25% collection remedy. And so I think from that, you can infer that this is important for California, and it is important to the sense of civil enforcement of remedies. But not a — I mean, whenever these questions about choice of law come up, it's because there's a difference in law between the two States, right? So just because California has a different law, how do we know that makes it so fundamental to California's public policy that it is enough here? You're just saying the law is different, but we knew that. We've set out in the appellant's reply brief the test on the restatement, and I think the restatement recognizes that it's extremely rare for them to be — for there to be an actual statement of legislative intent that something is, quote, the strong public policy or the fundamental policy of the State. And the restatement has this test to infer when it is, and I — and it seems to me, comparing other restatement cases that we've cited, this falls within that. But in this particular case, though, Counsel, again, relying on the restatement second of the conflict of laws, even though Mr. Zuckerhorn now lives in California, his children live in Florida and New York, look at the substantial interest the trust at Hawaii has. In this case, the trust was executed in Hawaii by Hawaiian resident Sally Zuckerhorn with — involving Hawaiian property. All the beneficiaries of the trust were born in Hawaii, and the lifetime income beneficiary, Herbert Zuckerhorn, was a Hawaiian resident for 70 years. Sally Zuckerhorn, the settler of the trust, had a — I assume a justifiable expectation that her choice of law provision would be enforced. At the time it was settled, all the trust contracts were in Hawaii, and the co-trustees are a Hawaiian bank. Doesn't that just kind of overload the issue on the one side, whereas you are speculating, I think, that because of the 25 percent issue that California has a really strong interest? How do you equate those two under the restatement? Hawaii certainly had an interest at one time. The testators are now long past the — They're the ones that drafted the trust, aren't they? They're the ones that brought it into being, and they're the ones whose expectations are taken into consideration here, right? That's correct, but it's an expectation of a restraint against alienation, which should be narrowly construed. And the two debtors now are longstanding California residents. They incurred debts in California from a number of California creditors, and the interest of those creditors in extending credit to get payment of just debts, in our view, counterbalances the — Even under the language and principles of the restatement? Yes, and I think — What do you rely on in the restatement to, if you will, capture the interest that you've just described of the creditors in California? How are they factored in in the restatement's analysis? The — Simply the statute, the California statute itself, and going back to this idea that this represents a unique policy of the state of California. Well, and I appreciate that argument that you made at the beginning, but I thought you were going on and saying that you had these people who now live here, you've got these creditors that have relied upon this. I'm trying to understand how the creditors and the fact that some of the beneficiaries now live in California play into the scheme contemplated by the restatement. Because the — whether it's a public policy doesn't matter unless California has a significant enough interest, right? Right. And I think that, you know, California has this — I think what was going through the legislature's mind, so to speak, when this statute was adopted is that they wanted to treat middle-class and working people who make wages and who are subject to the enforcement actions of the state equal to those that have inherited wealth. Your argument is primarily based upon this income distribution from the trust and claiming it's part of the bankruptcy estate. But didn't you waive that argument? You're making this argument for the first time on the appeal. There's nothing in the Bankruptcy Court record where you made that argument. I don't think that's correct, Your Honor. And we've kind of gone back and forth on that. Where in the Bankruptcy Court did you raise this particular argument? I may have missed it. At ER Volume 2, 195, and pages 202 and 203. 202 and 203. And you clearly raised this argument that the income distribution from the trust property is under the bankruptcy estate? Yes. There's no citation on those pages to 541A6 or 7, is there? The pages you just cited in the record? No, there is not. Are they in the Bankruptcy Court decision? I don't believe they are in the Bankruptcy Court decision. It was discussed extensively in the BAP decision. Of course, the BAP is not what we're reviewing. We're reviewing the Bankruptcy Court. So that was the BAP citation you gave me? No. I gave you the citation to our trial brief in the Bankruptcy Court. In the Bankruptcy Court. But those pages don't have the sections A6 or A7 that you're relying on now, right? That's correct. That's correct. And candidly, those two statutes were not cited by name in the Bankruptcy Court. We did cite 541A5, which was similar. So it didn't get into the Bankruptcy Court? It was never ruled upon by the Bankruptcy Court? The Bankruptcy Court sort of went off in a different direction. Yes or no would be a good enough answer. The answer is no. So how can we review something the Bankruptcy Judge didn't rule upon? Don't we have to remand the Bankruptcy Court to make a decision on the issue? I think the Bankruptcy Judge ruled on the principle that and concluded that no part of the distributions were property of the estate. I think that that decision was erroneous, can be reversed, and that if the Court feels that it wants to give the judge basically a chance to articulate on those particular statutes, 541A6 and A7, yes, it would need to be remanded. I'm just trying to figure out whether we have jurisdiction. If it hasn't been decided, I don't see how we can turn it over. And, of course, that's part of our waiver rule. So I just don't know where we end up. If you argue something, the Bankruptcy Court doesn't make a decision on it, there's no motion to make a decision on it, and then we get something in the record that the Bankruptcy Court hasn't ruled on. That's my problem with the case. I understand, Your Honor. And I'm running into my rebuttal time, but I will answer the question. Please, count it on my time. Hopefully directly and hopefully correctly, which is the fundamental issue of is this the money of the bankruptcy trustee was the central question in front of the Bankruptcy Court. It is true that, as is often the case, we didn't refine all of the legal issues and cite all of the cases and statutes and theories until we started getting it up on appeal. But the basic issue was before the Court. And so the 25 percent issue was before the Court? Yes. Yes. And do you feel the Court ruled on it in some fashion? Yes. I think the Court concluded that because this was a the Court focused on Bankruptcy Code Section 540.1A.5, which is the statute that says that a bequest, devise, or inheritance is property of the bankruptcy estate if received within 180 days of the bankruptcy filing, and concluded based on some BAP and other authorities that this was not a bequest, devise, or inheritance. Okay. I have one more. How many, what percentage of the outstanding debts are to California creditors? It's going to take me a while to figure that out, and I will try and answer it on rebuttal. Okay. Okay. We'll hear a closing counsel. Good morning, Your Honors. Dan Stern, appearing for the debtors. A couple things I want to address to the Trustee's argument. One, the A6 and A7 position for proceeds under A6 or after acquired property in A7 is not about the 25 percent carve-out. It's about if we don't get the 25 percent as the first try, we'll give this a second try, and we get the whole thing. That's why I read the argument. And then to address the issue, whether it was properly raised down in the bankruptcy court, if you look at the ER, which is, again, the Trustee's original trial brief back from 2011, the pages referred to in the reply brief, one, the first reference says, it's just one sentence. Alternatively, does income from the assets of a spendthrift trust, in quotes, lose its protections once they are distributed to the beneficiary? That's no citation to anything in that sentence. What's the ER reference? Pardon me? What is the ER reference you're referring to? I believe it was ER. It's the second volume, tab 14. Do you have the page number? Page number. It's page number in the tab 195, lines 19 and 20, 21-2. Then a few pages later in the same piece of paper, the Trustee's trial brief, they talk about the distributions out of the trust, but only as they come out under A-5, the 180-day clawback rule. Nothing about A-6 or A-7. And the bankruptcy court did rule on that and said the A-5 clawback rule doesn't apply to an inter vivos trust under Newton. So that was the end of that conversation on that particular issue. I don't believe that A-6 and A-7 was properly raised on appeal. The BAP found that, certainly. And even if it was, substantively, I don't think the statutes apply anyway, because those two statutes, A-6 and A-7, this is 541, A-6 and A-7, by the way, refer to A-6 by its own terms. The proceeds and the offspring and stuff like that have to relate back to something that was property of the estate in the first instance. So by its own terms, it doesn't apply, because the Spendthrift trust is taken out of the estate by 541C-2. Then the after-acquired property issue also requires a reference back to something that started out as property of the estate. It mostly comes up in Chapter 11 cases when a debtor in possession uses estate cash and buys something. So transferring the cash to the something, the something remains property of the estate. It's an after-acquired piece of property of the estate. All right. Looping back to the 25 percent claw-out or carve-out issue, there's no argument that Hawaii was the appropriate choice for Sally Zukerkorn to have made as her choice of law. It was the only choice, really. There was no other contact with anywhere else in the country. So I think that leg of the three-part restatement test has been met. The next leg, and the BAP kind of blended this up a little bit between the contracts part of the conflicts restatement and the trust part of the restatement. But I think if you read them together, you can kind of mash them together and end up fundamentally with a similar result either way. And the BAP even put that in a footnote. That said, the question of whether the interest with the 25 percent carve-out dealing with creditor-debtor relations, whether it's fundamental or not, like the BAP said, there's no bright line. So I don't know where the line is drawn. I'm not that clairvoyant. But there's no statement that it was a fundamental policy. And the only case that the trustees cited in the reply brief referred to a case from way back in 1967 related to the mortgage, purchase money mortgage, anti-deficiency rule, and said we're not going to apply that with a case coming out of Nevada, which doesn't have an anti-deficiency rule. We're not going to be reviewing the BAP decision. I understand. We're interested in what the bankruptcy judge did. And what the 25 percent rule is, again, the restatement is the frame of reference. Is it material? I don't think so. That's my argument. Mr. McConney, he has said, sure, it's material or fundamental or a strong public policy under the trust part of the restatement. Am I right that we don't even get to the question of how fundamental a public policy it is, though, unless California has a significant enough interest? And that's where I'm going with this next. So but even if the 25 percent carve-out is a fundamental or a strong public policy, under the 270 of the restatement, the one that deals with the trust part, the State that has the most significant interest related back to the trust is the State that has to be have a violation of its fundamental policy. And by taking that concept, it sort of loops back to the beginning part, which State has got the most significant relationship, and clearly it's Hawaii. So it's not a fundamental violation of Hawaii law to apply its own choice of law by its own one of its own residents to one of its own trusts. It would be, if under Hawaii, if Hawaii is a proper outcome, to carve out 25 percent when Hawaii doesn't have anything analogous to that in its spendthrift provisions. What's our standard review for that decision made by the BAP that the 25 percent is not a part of the fundamental law of California? It did it under de novo standard. That's why they stated the way they were going to analyze the case. Any other questions? No. Thank you. Thank you, counsel. We have a little bit of rebuttal time here. You want to use it? Yes, very quickly, to answer Judge Friedland's question. It's contained at tab 26, pages 355 to 356. And of the 22 creditors holding approximately 162,000 in claims against the Zuckercorns, 13 were based in California. Only one was based in Hawaii. Unfortunately, I don't know how to divide. I don't know how the amounts of those creditor claims divide up. Is that really critical, the amounts of the current claims? Or are we looking at something else when we consider the appropriate choice of law? Well, I think it answers this question of, does California have an interest? Was it California that has an interest, or the creditors that have an interest? Well, the creditors who do business in the state of California have it. And California courts are there to enforce their requirements. Indeed, they are. And one of the things they look at is the conflicts of law restatement. And that refers us back, then, to the fundamental questions which get to when the document was created, the expectations of the people, et cetera, et cetera, which we've discussed. Yes. Isn't that correct? Yes. The second thing I want to do very quickly is, Judge Wallace had asked about whether this 25% thing was raised. And it was indeed, and it was discussed in the — the bankruptcy court's decision came in two parts. It was an order on cross motions for summary judgment, and then an order after trial. And the issue on the 25% was specifically mentioned by the bankruptcy judge in its memorandum on the cross motions for summary judgment. That's at ER tab 6, page 55. The final thing I want to do in the 50 seconds I have left is to give the court the view from the ground, which is that a number of states, including Delaware, are doing the same thing with the trust business that Delaware, for years, has successfully done with corporations. Delaware has abolished the rule against perpetuities and is sort of setting up a little cottage industry of what they call dynasty trusts. And so I think this is going to be a big deal in coming years, where people are going to be using these devices to avoid the payment of just debts litigated in judgments by courts. And I ask the court to use its wisdom and sense of justice to figure out the interests of all the parties in coming to a just solution. Thank you. You want us to write to the folks in Delaware? Maybe not. You know, I don't know that you have the juice with them that you have with the Judicial Council on the U.S. v. Nevada case, but anyway, thank you very much. Thank you. Thank you both for your argument. The case is argued as submitted.
judges: Wallace, Smith, Friedland